---

(29 Misc. Rep. 487.)

In re EAST 175TH ST. FROM THE CONCOURSE TO ANTHONY AVE. In re ELLIOT PLACE FROM JEROME AVE. TO THE CONCOURSE. In re WHITLOCK AVE. FROM HUNT'S POINT ROAD TO WESTCHESTER AVE.

(Supreme Court, Special Term, New York County. November, 1899.)

EMINENT DOMAIN—MUNICIPAL CORPORATIONS—OPENING STREETS—BENEFITS —ASCERTAINMENT.

> Greater New York Charter (Laws 1897, c. 378) § 1614, provides that public improvements begun under the consolidation act of 1882 might be continued under that act after the charter's adoption, unless otherwise provided, and that no right or remedy previously accrued should be affected by the new charter. Held, that in proceedings to open a street, where the title to land condemned had vested in the city while the consolidation act was in force, interest should not be included in the amount of assessment for benefits, nor could such assessments exceed in amount one-half the valuations of the tax commissioners, since such rights became fixed at the date that title vested, and the subsequent charter did not apply.

Proceedings to open East 175th street and other streets. Motion to confirm the report of commissioners. Granted.

John Whalen (John P. Dunn, of counsel), for city of New York.
James A. Deering, for Woolf & Rogers.
Charles V. Gabriel, for Litter.
Hawke & Flannery, for Selje and others.
McCarty & Baldwin, for estate of Simpson.
John C. Shaw, for property owners.

NASH, J. The question here is whether, in these proceedings, awards and assessments for benefits shall be governed by the provisions of the consolidation act of 1882, or those of the Greater New York charter. In the proceeding to open East 169th street from Jerome avenue to the Concourse (40 App. Div. 452, 58 N. Y. Supp. 100), it was held that commissioners of estimate and assessment, appointed in a condemnation proceeding instituted by the city of

New York, who on December 22, 1897, had completed abstracts of estimate and assessment, upon the principles prescribed by the consolidation act (chapter 410, Laws 1882), as then in force, had no power, after January 1, 1898, the date when the Greater New York charter (chapter 378, Laws 1897) took effect, to make new awards and assessments, upon the principles prescribed by the new charter, although their final report had not been filed or confirmed at that time. That decision was placed upon the ground that the proceedings were instituted, and all the valuations, whether of property taken or of property benefited, were made, before the new charter took effect; and in the same proceeding it was held that interest could not be computed by the commissioners as part compensation to the owners of property benefited, as provided in the new charter. In that proceeding the commissioners had, before the new charter took effect, taken and considered all the testimony presented to them by the property owners and the city, and had substantially given judgment upon that testimony. The same may be said here as to the Elliot place and Whitlock avenue proceedings. In the former the commissioners were appointed November 14th, and qualified November 18, 1896. Title vested in the city June 1, 1897. The commissioners commenced taking testimony February 26, 1897. The property owners closed their testimony May 13th, and the city introduced testimony May 20, 1897. The commissioners made up their preliminary awards and determined the area of assessment June 23, 1897. The Whitlock avenue proceeding was commenced in 1894. Commissioners qualified in 1895. Title vested in the city March 16, 1896. The testimony was closed February 23, 1897. The commissioners made up their preliminary awards April 5th, and determined the area of assessment April 9, 1897. In each of those matters the commissioners heard and considered the evidence, and had met and proceeded to a determination as to the amount of the awards, and had "substantially given judgment" based upon the principles prescribed by the consolidation act while that act was in force; all that remained was to report their proceedings and determination to the court. In the matter of East 175th street the proceeding was commenced January 17, 1896, by resolution directing the cost and expense to be assessed. Commissioners were appointed April 28th and qualified May 1, 1897. Title vested in the city November 18, 1897. Commissioners commenced taking testimony December 8, 1897, concluded February 16, 1898. Preliminary report signed July 13, 1898. It was not determined in the matter of the 169th street proceeding at what stage of the proceeding, in a matter commenced under the consolidation act and not concluded when the present charter of the city took effect, the awards for properties taken and the assessments for benefits should be made, if at all, in accordance with the provisions of the new charter. This seems to be necessary now in disposing of the motion to confirm the report of the commissioners in the matter of East 175th street. There is no provision of the new charter declaring that its provisions shall affect pending proceedings for the opening of streets. If the consolidation act had been repealed, and all of its provisions for proceedings in the

matter of opening streets abrogated, in terms, it would have ex vi termini discontinued all pending proceedings, and all would have to be begun anew. But, by express provision of the new act of incorporation, all actions, suits, or proceedings under the New York City consolidation act of 1882, or amendments thereof, may be prosecuted and defended to final effect in the same manner as they might under the law then existing, "unless herein otherwise specially provided," and "no right or remedy of any character shall be lost or impaired or affected by reason of this act." Section 1614. It becomes, therefore, a matter of interpretation as to when, in a pending street-opening proceeding, the provisions of the new charter can be held to apply and have effect, without impairing or affecting existing rights. It would seem that such time is before the rights of all the parties become fixed and determined in the due course of the proceeding. The rights of all parties became fixed when title to the lands taken vested in the city, under the consolidation act. The compensation for property taken was fixed as of that date, no matter when the evidence in regard thereto should be taken. And as a consequence the amount of compensation to property owners which should enter into assessments for benefits was also ascertained as of the same date. The assessment of benefits was limited in amount to one-half the valuation of the tax commissioners. The property owners could deal with their properties on the basis thus fixed, no matter how long the proceeding should be prolonged or continued, which, as we have seen, might be for years.

The title to the properties taken for the opening of East 175th street vested in the city on the 18th of November, 1897. By the law then in force, the property owners became entitled to the value of their properties at that date, and the limit of assessment for benefits then fixed by law was one-half of the valuation of the tax commissioners. Any statute subsequently enacted or put in force, affecting the compensation to the owners of properties, by which additional amounts should be assessed for benefits, would impair existing rights given by law. This, by the express provision of the act, seems not only to be prohibited, but in violation of the rule that laws shall not be retroactive or have a retrospective effect. If the consolidation act had been amended subsequent to the time when title vested in the city, by putting an additional pecuniary burden upon the properties of persons assessed for benefits or upon the city, it could not be claimed that such subsequent legislation would affect rights of property or a right given by statute which had become fixed and determined, and thereby vested. The new charter in this respect cannot have any greater force or effect than such an amendatory act. I am of the opinion that the decision of the motion may be put upon this principle, as well as upon the express provision of the charter that no right or remedy of any character shall be lost or impaired or affected by reason of the act, which would be the result here if it should be held that the rights of parties here, as to the amount and method of assessment, are to be regulated by the provisions of the present charter of the city.

I find warrant for this conclusion in the opinion of Mr. Justice

Russell in the 169th street proceeding (26 Misc. Rep. 259, 56 N. Y. Supp. 820), where he said:

"From that moment [viz. the date of vesting of title], therefore, the city owned the title to the land taken for the streets, and was entitled to their use. Correlatively, therefore, the owners had the right to look to the law as it then stood for compensation. * * * In those cases where any of the property of the benefited owner is taken, his compensation comes by deduction from the amount of the assessment for benefit. He should therefore have the right to rely upon the law as it was when his property was taken from him; so that, while his measure of compensation is adjusted under one law then in force, the burden to be imposed for benefits should not be imposed under a law subsequently passed. * * * For the purposes of uniformity of action and preventing confusion, it may be fairly assumed that the legislature did not intend to increase the burden of owners of property affected by local improvements inaugurated under prior laws."

Also by what Mr. Justice Barrett said in the same proceeding:

"The true theory of award and assessment is that, when title vests in the city for public use, the property owner's right to just compensation immediately attaches, and therewith the assessment for benefit accrues." In re Opening of East 169th St., 40 App. Div. 459, 58 N. Y. Supp. 105.

The result is the more satisfactory as the rights of parties are fixed and determined by law, and are not subjected to the neglect, caprice, or the acts of persons.

It follows that in these proceedings interest as compensation for properties taken should not be computed by the commissioners nor included in the amount of the assessments for benefits, and that such assessments cannot exceed in amount one-half the valuations of the tax commissioners. The reports should be sent back to the commissioners for correction in the particulars stated, and, as so corrected, confirmed.

Ordered accordingly.